MICHAEL J. HEYMAN
United States Attorney

ADAM ALEXANDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG SCOTT VALDEZ,<br><br>Defendant. | No. 3:26-cr-00014-ACP-KFR |

**MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

COMES NOW the United States to move for and proffer the grounds justifying Mr. Valdez's detention pending trial in this matter. See United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). The evidence gathered to date in this ongoing, reactive investigation indicates that Mr. Valdez is a compulsive child exploitation offender engaging in high-volume conduct targeting children as young as 13 in Alaska in order to facilitate both the production of child pornography and child sex trafficking, among other offenses.

## I. FACTS

On or about October 14, 2025, 36-year-old Craig VALDEZ arranged via Snapchat to pick up 15-year-old MV1 from her family's residence and brought her by car to his own residence on Endicott Street in Anchorage, Alaska for the purpose of sexually exploiting the child to celebrate his birthday. Fortunately, MV1's sibling alerted their mother, who promptly located MV1 using a popular family tracking application at VALDEZ's Endicott Street residence. After arriving, MV1's mother called APD and while waiting outside VALDEZ's home for patrol to arrive, heard her daughter in the residence say words to the effect that she wanted to go home. MV1's mother then entered the residence, struck VALDEZ once in the face and recovered the child, who exhibited signs of extreme drug or alcohol intoxication and had difficulty walking and maintaining consciousness. APD Patrol responded a short time later, at which point VALDEZ, puzzlingly, chose to flee from his own residence.

MV1's mother brought the child home, at which point she realized that MV1's own cell phone had been left in VALDEZ' residence. With admirable presence of mind, MV1's mother then used a linked iPad to access MV1's Snapchat messages and took screen captures of the messages between her 15-year-old daughter and 36-year-old VALDEZ, labeled "Big Daddy Griffin" and using the Snapchat handle "noname20233132" (depicted below) wherein VALDEZ enticed the child to travel with him to his home for the purposes of sexual exploitation. As she was capturing the messages from her daughter's Snapchat account, it appeared to the victim's mother that VALDEZ was attempting to delete the conversation and block MV1 from his own device.

*U.S. v. Valdez*
3:26-cr-00014-ACP-KFRPage      2 of 9
Case 3:26-cr-00014-ACP-KFR     Document 4     Filed 02/20/26     Page 2 of 9



*Mr. Valdez (left) and one of his burner Snapchat handles (right)*

Later that morning, MV1's mother brought the child to the hospital where she undertook a forensic sexual assault examination and was interviewed, along with her mother, by detectives from APD's Crimes against Children Unit. In that interview, both MV1 and her mother positively identified VALDEZ as the individual in the Endicott residence when the child was rescued by her mother. MV1 further stated that she had been introduced to VALDEZ by other children a year or so earlier, at which point she would have been 13 or 14 years of age. It is believed by law enforcement that the October 14 incident was not the first time MV1 had been exploited by VALDEZ. The Alaska state crime lab has identified a DNA sample recovered from MV1, and the FBI

has served a DNA warrant on VALDEZ in order to run a comparison between the two profiles.

II. ARGUMENT

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. United States v. Aitken, 898 F.2d 104, 107 (9th Cir. 1990); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

**1. There is a presumption of detention based on the nature of the charges**

Because the defendant is charged by Indictment with violations of 18 U.S.C. §§ 1591 (child sex trafficking); 2251 (production of child pornography); 2422(b) (enticement and coercion of a minor) and 2252A (receipt of child pornography), the United States is entitled by statute to a detention hearing, and the Court begins its analysis on the question of detention subject to the rebuttable presumption that no condition or combination of conditions will reasonably ensure the defendant's appearance at trial or the safety of the community. 18 U.S.C. § 3142(f)(1)(A), (E) and (e)(2)(A).

Even if the defendant does rebut this presumption, it "'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in [18 U.S.C.] § 3142(g).'" United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting United States v. Dominguez, 783 F.2d 702, 707 (7th Cir.

*U.S. v. Valdez*
3:26-cr-00014-ACP-KFRPage     4 of 9
Case 3:26-cr-00014-ACP-KFR    Document 4    Filed 02/20/26    Page 4 of 9

1986)). The United States anticipates that United States Probation will recommend Mr. Valdez' release on conditions as is their general practice with child sex offenders subject to the rebuttable presumption of detention, despite the magnitude and severity of his conduct in this case. The United States maintains that based on the nature and circumstances of that offense conduct; the weight of the evidence against Mr. Valdez; his history and characteristics; and the nature and seriousness of the danger to he poses, there are no conditions or combination of conditions will reasonably assure the safety of the community in this matter.

If this court is inclined to order Mr. Valdez' release, the United States will move for a stay of any release order pending de novo review by the District Court pursuant to 18 U.S.C. § 3145. See, e.g. United States v. Moon, No. CR-22-00700-001-PHX-DWL, 2025 WL 2879750, at *1 (D. Ariz. Oct. 9, 2025) ("Additionally, as many courts have recognized, "[a] necessary adjunct to the authority to review is the authority to stay.") (citing United States v. Trinidad-Acosta, 2011 WL 5546547, *1 (D. Me. 2011); United States v. Jubert, 2023 WL 5831098, *2 (S.D. Miss. 2023) ("[W]hile Section 3145 does not expressly authorize a stay...the absence of stay authority could render the district court's review power illusory") and United States v. Brigham, 569 F.3d 220, 230 (5th Cir. 2009) ("[W]e find the stay imposed by the district court to be without legal error.").

**2. The statutory factors weigh in favor of detention**

In assessing whether pretrial release or detention is appropriate, Congress has specified factors that should guide the Court's inquiry. Weighing these factors in this case supports the conclusion that pretrial detention is appropriate.

*U.S. v. Valdez*
3:26-cr-00014-ACP-KFRPage 5 of 9
Case 3:26-cr-00014-ACP-KFR    Document 4    Filed 02/20/26    Page 5 of 9

The FBI has identified at least eleven other suspected juvenile victims of Mr. Valdez through a preliminary review of his Snapchat communications and use of the CashApp platform. In addition to the offense conduct involving MV1 described above, Mr. Valdez demonstrates, in these communications, a compulsive pattern of child exploitation conduct targeting juvenile females in Alaska using an anonymized or "burner" Snapchat account to geolocate, identify, and target juvenile victims in Anchorage and Juneau, and CashApp to pay, or attempt to pay children to engage in prostitution and produce, at his direction, child exploitation images in violation of state and federal law as charged in the Indictment.

An analysis of only one of Mr. Valdez' anonymous Snapchat accounts ("noname20233132," used by Mr. Valdez along with another account "dochank") illustrates the nature of his conduct and the threat he poses to the safety of the community. In addition to MV1, a preliminary review by the FBI has revealed at least eleven other suspected juvenile victims solicited by Mr. Valdez, who exhibits a compulsive pattern of behavior, bombarding children he finds on Snapchat with requests for sexually explicit images and even more concerning, causing and attempting to cause children to engage in commercial sex acts. A very brief, illustrative example of the types of exchanges Mr. Valdez habitually instigated with different individuals he identified for victimization through Snapchat are excerpted below.

The following excerpts highlight just a few of the **unsuccessful** attempts by Mr. Valdez to coerce or entice exploitative conduct and solicit prostitution in order to highlight the compulsive nature of his disturbed conduct; unfortunately, there are many

*U.S. v. Valdez*
3:26-cr-00014-ACP-KFR Page 6 of 9
Case 3:26-cr-00014-ACP-KFR    Document 4    Filed 02/20/26    Page 6 of 9

more successful attempts such as those involving MV1 as charged in the pending Indictment.

> VALDEZ: Damn, there's a girl as hot as you in Juneau?
>
> VALDEZ: Oh damn, you're gorgeous but I'm 30 so probably a little young even though you are absolutely […]
>
> VALDEZ: Possibly up for some fun this weekend though if you are
>
> VALDEZ: Damn you're gorgeous […]
>
> VALDEZ: Damn you are so fine
>
> VALDEZ Are you down to sell?
>
> VALDEZ: So damn sexy baby, up for some fun or making some [money]
>
> VICTIM: fuck off
>
> . . .
>
> VALDEZ I'm still interested in buying content if you're willing to sell, good money
>
> VALDEZ: Hey just got my PFD. 1k for pics and video
>
> …
>
> VALDEZ: F*** you look so delicious
>
> VALDEZ: Do you meet in person? I'm very happy to help support you
>
> VICTIM: No
>
> VALDEZ: You sure? 400
>
> VICTIM: I'm sure
>
> VALDEZ: Damn okay I would love to eat you out
>
> VICTIM: Sorry. No.
>
> VICTIM: Wouldn't have the time. As i'm flying out of town to go be with my grandma. She got medivaced out. I'm a little traumatized from yesterday. . . As i'm going by my grandma with nowhere to stay and no money for food. Thanks for the offer. But I have to respectfully decline.
>
> VALDEZ: Ok that's fair . . . Just too bad. You're hot af ba
>
> …

VALDEZ: Let's hang out next time you're feeling this way

VICTIM: no

VALDEZ: Well damn, no way to change you mind?

VALDEZ: So damn cute

VALDEZ: Yum

VALDEZ: Can I come over and keep you company? Lol

VICTIM: never

VICTIM: weirdo

VICTIM: perv on someone else [...]

### III. CONCLUSION

No matter how restrictive, all sets of release conditions "contain one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance." United States v. Hir, 517 F.3d 1081, 1092 (9th Cir.2008) (citing United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990)). Given the surreptitious and deceptive nature of Mr. Valdez's child exploitation conduct as charged in the Indictment and the lengths he is willing to go to satisfy his own pedophilic sexual compulsions substantial concerns regarding the danger he poses to the community, there are no conditions or combination of conditions that could be imposed by this court that would not ultimately rely on the court trusting Mr. Valdez to act in a manner fundamentally inconsistent with his history and characteristics.

"As the Ninth Circuit specifically recognizes, conditions of release depend largely on the Defendant's good faith—or lack of it. If conditions can too easily be circumvented or manipulated, they are not effective." United States v. Petersen, 557 F. Supp. 2d 1124, 1130-1131 (E.D. Cal. 2008), (citing Hir at p. 1093, quoting United States v. Tortora, 922

*U.S. v. Valdez*
3:26-cr-00014-ACP-KFRPage    8 of 9
Case 3:26-cr-00014-ACP-KFR    Document 4    Filed 02/20/26    Page 8 of 9

F.2d 880, 887, fn. 11 (1st Cir.1990)). "Where conditions of release depend upon good faith compliance and trust, where, as here, a defendant is . . . a liar . . . there is an unacceptably high risk that the defendant will not comply in good faith nor can he be trusted to comply with proposed conditions, or any other combination of release conditions imposed upon him. Petersen at 1131 (citing Hir at 1093). The record here gives little basis to conclude that the Court can expect to see such good faith compliance here. Accordingly, the government asks the Court to enter an order for detention pending Mr. Valdez' trial in this matter.

RESPECTFULLY SUBMITTED February 20, 2026 at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ *Adam Alexander*
ADAM ALEXANDER
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2026 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *Adam Alexander*

U.S. v. Valdez
3:26-cr-00014-ACP-KFR    Page 9 of 9
Case 3:26-cr-00014-ACP-KFR    Document 4    Filed 02/20/26    Page 9 of 9